UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RANDY BROWN,**   Plaintiff,   v.   **CITY OF ESSEX COUNTY STATE OF NEW JERSEY, NEW JERSEY PROBATION DIVISION - CHRISTOPHER STANECKI, ESSEX COUNTY SHERIFF'S DEPARTMENT - ARMANDO FONTOURA,**   Defendants. | Civil Action No. 2:10-03980   OPINION   HON. WILLIAM J. MARTINI |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Defendants Superior Court of New Jersey, Essex Vicinage Probation Division, and Chief Probation Officer Christopher Stanecki's (collectively, "State Defendants") motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as on Defendants County of Essex (improperly pled as "City of Essex County State of New Jersey"), Essex County Sheriff's Office and Armando B. Fontoura's (collectively, "Essex County Defendants") motion to file a late pleading and to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, Defendants' motions are **GRANTED** in their entirety.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of Plaintiff Randy Brown's bail hearing in Manhattan Criminal Court on September 24, 2009. (Compl. ¶ 6.) At that hearing, Plaintiff alleges he was denied bail due to a separate, outstanding warrant from Essex County, New Jersey ("Essex County Warrant") that turned up when his name was run through the system. (*Id.*) Plaintiff claims that the Essex County Warrant is for a different person, possibly named Dwayne Brown, and that he has tried to address the mistake with both Essex County and the Manhattan Criminal Court. (Compl. ¶ 21.) The Manhattan Criminal Court seems to have agreed with Plaintiff and "dismissed" this outstanding warrant on October 1 or 16, 2009.[1] (Compl. ¶¶ 11, 30.) However, Plaintiff claims that he had already incurred damages, since he had been remanded and not granted bail, and since he was classified by the Department of Corrections as a "high" offender based on the presence of the Essex County Warrant. (Compl. ¶ 12.) He was moved to "low" classification on January 21, 2010. (Compl. ¶ 27.) While not completely clear, Plaintiff's multiple filings seem to indicate that he served a prison sentence, or was otherwise detained, through April or May of 2010 as a result of the charges in Manhattan

---

[1] While the Plaintiff describes the action by the Manhattan Criminal Court as a "dismissal" of the warrant, the Court interprets this to mean that the Manhattan Criminal Court took the outstanding warrant off of Plaintiff's record (either generally, or with the Department of Corrections). Plaintiff is not contending that the Essex County Warrant itself is invalid; he is only asserting that the person named in the warrant is a different individual than himself.

Criminal Court.[2]  While the Manhattan Criminal Court "dismissed" the Essex County Warrant, Plaintiff alleges that he was unable to fully clear it off his record without the help of Essex County.  For example, Plaintiff claims that his Department of Corrections records now state the birth date listed on the Essex County Warrant and not his actual birth date.  (Compl. ¶ 24.)  Essentially, Plaintiff is claiming that Defendants did not do enough to help clear up the mix-up regarding the outstanding warrant, despite his repeated requests.

As a result of the events stated above, Plaintiff filed a complaint in the Superior Court of New Jersey alleging a variety of claims against Defendants.  The case was then removed to this Court on August 4, 2010.  Plaintiff's Complaint asserts the following claims: "(1) abuse of power, (2) failure to follow proper procedures, (3) negligence, (4) pain and suffering, (5) false imprisonment, (6) slander, (7) cruel and unusual punishment, (8) defamation, (9) loss of property, (10) loss of use of property."  (Pl.'s Compl., Form A.)  His complaint also more specifically lists Section 1983 claims under the Fourth, Fifth, Eighth and Fourteenth Amendment.  (Compl. ¶ 53.)  On December 9, 2010, in response to a motion to dismiss filed by Essex County Defendants, this Court dismissed

---

[2] There is little, if any, information provided regarding the actual charges against Plaintiff in Manhattan Criminal Court, but these charges are not at issue here.  Plaintiff is only claiming that the presence of an outstanding warrant from New Jersey on his record affected his bail amount and classification while imprisoned, not that the warrant affected any sentence he may have received in Manhattan Criminal Court.

Plaintiff's tort claims[3] as to all Defendants. Essentially, what remains at this point are Plaintiff's Section 1983 claims under the Fourth, Fifth, Eighth and Fourteenth Amendment.

On January 11, 2011, after receiving an extension of time, the State Defendants filed their instant motion to dismiss. While waiting for the Court to act on that motion, the Essex County Defendants allegedly forgot that since their first motion to dismiss was granted, they had an obligation to answer or otherwise move. Therefore, on January 25, 2011, a few weeks after the deadline to answer or otherwise move passed, they filed their instant second motion to dismiss and for leave to file a late pleading.

## II.     DISCUSSION

### A.     Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true,[4] the plaintiff has failed to plead

---

[3] This includes Plaintiff's claims of negligence, false imprisonment, slander, and defamation.

[4] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see Twombly*, 550 U.S. at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). Furthermore, the Plaintiff must "provide the 'grounds' of his 'entitlement to relief,'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility...." *Iqbal*, 129 S.Ct. at 1949 (2009).

In determining the sufficiency of complaint filed by a *pro se* Plaintiff, courts must be mindful to construe it liberally in favor of the plaintiff, even after *Iqbal*. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Courts must therefore "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). However, a *pro se* litigant's complaint must still comply with the pleading standards set forth in Federal Rule of Civil Procedure 8(a)(2), which requires that allegations in a complaint set out a "short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2); *Erickson*, 551 U.S. at 93-94. Notwithstanding the

liberal construction of *pro se* complaints, a court need not accept legal conclusions disguised as statements of fact, unsupported conclusions or unwarranted references, regardless of the status of the plaintiff. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Okpor v. Kennedy Health System*, Civ. No. 10-1012, 2010 WL 3522784, at *2 (D.N.J. Sept. 2, 2010). Thus, a *pro se* litigant cannot rely on bald assertions or legal conclusions to survive a motion to dismiss. *Morse*, 132 F.3d at 906.

### B. Motion to File a Late Pleading Standard

Pursuant to Federal Rule of Civil Procedure 6(b), "a district court may extend the deadline for a motion paper for good cause . . . if the party failed to act because of excusable neglect." Essentially, excusable neglect requires "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1312 (3d Cir. 1995) (quoting *Dominic v. Hess Oil*, 841 F.2d 513, 517 (3d Cir. 1988)). In determining whether a party's neglect is excusable, courts must look to the following factors: (1) danger of prejudice to the nonmovant; (2) length of the delay and potential effect on judicial proceedings; (3) reason for the delay including whether it is in reasonable control of the movant; and (4) whether the movant acted in good faith. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993) (listing excusable neglect factors in the context of Fed. R. Bankr. P. 9006(b)(1)); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 323-29 (3d Cir. 2001)

(applying the *Pioneer* factors in a Rule 6(b) setting).

    **C.**    **Essex County Defendants' Motion to File a Late Pleading**

Before Essex County Defendants' second motion to dismiss can be addressed, it must be determined whether it should be accepted out of time. After analyzing the factors laid out in the standard set forth above, the Court determines that Essex County Defendants' motion should be accepted out of time. First, there is no danger of prejudice to the nonmovant. Plaintiff is no longer in jail, and will not be prejudiced by any delay caused by the motion. Moreover, Essex County Defendants filed their motion only a few weeks after it was due on December 30, 2010. There was no substantial delay or effect on the proceedings, as State Defendants' motion to dismiss was also still pending. Furthermore, as is the case here, the Third Circuit has held that if a failure to file within the allotted time period is an honest oversight and not part of a "sinister, well-conceived plan" to frustrate the nonmovant's efforts, a good faith movant will generally be allowed to file a late pleading. *Kimberg v. Univ. of Scranton*, Civ. No. 09-3314, 2010 U.S. App. LEXIS 22565, at *11 (3d Cir. Oct. 27, 2010). Based upon these factors, the Court will accept Essex County Defendant's second motion to dismiss even though it was filed out of time.

    **D.**    **Allowing a Second Motion to Dismiss**

Though the Court accepts Essex County Defendant's instant motion out of time, there is a second procedural issue present here. Essex County Defendants have already

filed one motion to dismiss, addressing only that Plaintiff's tort claims should be dismissed for failure to comply with the New Jersey Tort Claims Act ("NJTCA"). That motion has already been ruled on, and granted, by this Court. Generally, successive motions to dismiss are not permitted under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(g) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). However, a Rule 12(b)(6) affirmative defense is exempt from this general limitation, and may be raised (1) in an answer, (2) in a motion for judgment on the pleadings, or (3) at trial. Fed. R. Civ. P. 12(h)(2). While a technical reading of the rules appears to prevent defendants from filing successive pre-answer motions to dismiss, "many courts have interpreted these rules permissively and have accepted subsequent motions on discretionary grounds." *FTC v. Innovative Mktg.*, 654 F. Supp. 2d 378, 383 (D. Md. 2009). The court in *Innovative Marketing* explains that a second motion to dismiss may be permitted if it "will not visit that sort of inconvenience or prejudice upon the plaintiffs that is sought to be avoided under the federal rules." 654 F. Supp. 2d at 384. Additionally, allowing a subsequent motion to dismiss for failure to state a claim can provide efficiency benefits, as it prevents unnecessary delay in the proceedings. *In re Westinghouse Sec. Litig.*, Civ. No. 91-354, 1998 U.S. Dist. LEXIS 3033, at *24 (W.D. Pa. Mar. 12, 1998).

The key to deciding whether to allow a subsequent motion to dismiss, then, is

balancing the possible harm of accepting the motion with the time and expense of litigation if the motion is refused.  In the present case, Essex County Defendants' second motion to dismiss will not prejudice or inconvenience Plaintiff.  Additionally, allowing the subsequent motion to dismiss will certainly prevent additional burdensome litigation.  As such, the Court will accept Essex County Defendants' instant motion to dismiss.

      E.     **Essex County Defendants' Motion to Dismiss**

Now that it has been determined that Essex County Defendants (1) may file a second motion to dismiss, and (2) may do so out of time, the merits of that motion may be addressed.  Essex County Defendants argue that (1) Plaintiff has failed to properly state a *Monell* claim to hold a municipality liable, and (2) the Complaint fails to satisfy the *Twombly/Iqbal* standard and therefore fails to state a claim.  These arguments will be addressed in turn.

Under *Monell*, "a local government may not be sued under 42 U.S.C. §1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  All three Essex County Defendants are "local government" entities.  This includes Armando Fontoura, for though Plaintiff does not state whether he is suing him in an official or individual capacity, Plaintiff's Complaint includes zero allegations against Mr. Fontoura personally.  Plaintiff also refers to Mr. Fontoura as "Essex County Sheriff's Department - Armondo Fontoura" in his pleadings.  Though the Court is mindful that Plaintiff is *pro se*, and his Complaint is therefore construed liberally

9

in his favor, there is no indication in the Complaint that Plaintiff has any claims against Mr. Fontoura individually. As such, the Court will construe his Complaint as against Mr. Fontoura in his official capacity – making all three Essex County Defendants covered by *Monell*'s limitations on liability.[5]

Local government entities "may only be held liable if the injury results from an official 'policy or custom.'" *Monell*, 436 U.S. at 694. Such official customs or policies include, "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (citing *Monell*, 436 U.S. at 691)). A plaintiff suing a state or local government under 42 U.S.C. §1983 must show that the alleged injury was not an independent act by a government employee, but rather conduct encouraged by or consistent with an established policy or custom. *See Monell*, 436 U.S. at 691 ("A municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on the *respondeat superior* theory.") Additionally, in limited situations, a municipal entity can be held liable in Section 1983 cases if the plaintiff can prove that the entity failed to train and properly educate employees about their legal duty to avoid violating citizens' rights. This requires a plaintiff to show that "policymakers are on actual or constructive notice that a particular omission in their training program causes employees to violate citizens'

---

[5] Government officials sued in their "official capacity" are considered suits against the governmental entity, not the named official. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

constitutional rights[.]" *Connick*, 131 S. Ct. at 1960.

Here, Plaintiff claims that the Essex County Sheriff's Office was notified that Plaintiff was not the true object of the outstanding Essex County warrant, and failed to take any action in response to that notification. This error, Plaintiff alleges, put Plaintiff in a different holding arrangement and at a higher bail status while incarcerated in New York.[6] Plaintiff does not, however, offer any plausible allegations that these actions are connected to any policy or custom of any of the Defendants. Plaintiff's only acknowledgment of a custom or policy is "Plaintiff state (*sic*) that he worries how many other people the defendant did this to." (Compl. ¶ 68).

These allegations by Plaintiff do not meet the *Monell* standard. He has not made any claims of a government custom or policy that compelled the employees' alleged actions, nor has he made any claims of faulty employee training policy. Furthermore, he does not allege that Defendants were deliberately indifferent to his cause or that there is a flaw in the employee-training program. Plaintiff only complains that he believes the Essex County Sheriff's Office employees did not perform their job well enough. As such, Plaintiff has failed to reasonably connect the alleged actions (or, more aptly, inactions) to any of the government's customs or policies, and Plaintiff's Section 1983 claims against

---

[6] Though Plaintiff seems to claim that it was the duty of the Essex County Sheriff's Office to make an appearance at Plaintiff's court hearings in order to remedy the warrant mistake, he also states that the Manhattan Criminal Court "dismissed" the warrant after only a couple of weeks. (Compl. ¶¶ 11, 30.) It is unclear, then, why Plaintiff believes any of the defendants had a responsibility to act after Manhattan Criminal Court had already responded.

Essex County Defendants fail.

    **F.    State Defendant's Motion to Dismiss**

State Defendants allege that Plaintiff's Complaint as against them fails for the following reasons: (1) the suit is barred by the doctrine of sovereign immunity, (2) State Defendants are not "persons" subject to liability under Section 1983, (3) in the absence of intentional discrimination, Plaintiff's allegations of negligence do not give rise to a Section 1983 claim, (4) Plaintiff cannot recover under Section 1983 based on *respondeat superior*, and (5) Defendant Christopher Stanecki is entitled to qualified immunity. These arguments will be addressed in turn.

The Eleventh Amendment has been interpreted to provide that states are sovereign entities generally immune from suits by private parties in federal court. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). Furthermore, the Eleventh Amendment acts as a jurisdictional bar to the federal courts hearing claims against the state. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 365 (3d Cir. 1997), *aff'd*, 527 U.S. 666 (1999). Even if the state is not directly named as a party, Eleventh Amendment immunity still applies where "the state is the real party-in-interest." *Carter v. City of Phila.*, 181 F.3d 339, 347 (3d Cir. 1999). This Eleventh Amendment immunity, however, is subject to three exceptions: "(1) congressional abrogation, (2) state waiver, and (3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp.*

*v. Bell Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001).

Here, Defendant Superior Court of New Jersey, Essex Vicinage, Probation Division is a state agency, and Defendant Christopher Stanecki is a state official. Suits against state agencies and state officials in their official capacities are no different than suits against the State itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, both State Defendants are protected by sovereign immunity. Additionally, none of the exceptions to Eleventh Amendment immunity apply here. First, the Supreme Court has expressly held that Congress has not abrogated sovereign immunity for Section 1983 actions. *Quern v. Jordan*, 440 U.S. 332, 342-45 (1979). Second, New Jersey has not waived immunity, and courts in this district have held that suits against New Jersey may only be brought in state court. *See Neil v. McDonough*, 515 F. Supp. 113, 122 (D.N.J. 1980), *aff'd* 648 F.2d 1252 (3d Cir. 1981). Finally, Plaintiff is not requesting prospective relief to end any ongoing violations. Therefore, since none of the exceptions apply, Plaintiff's claims against State Defendants are barred by the Eleventh Amendment, and Plaintiff's Complaint must be dismissed.[7]

## III.   CONCLUSION

For the reasons stated above, Defendants' motions are **GRANTED** in their

---

[7] Since the Court finds that State Defendants are protected from suit by the Eleventh Amendment, the Court need not address State Defendants' additional arguments in favor of dismissal.

entirety, and Plaintiff's Complaint is **DISMISSED** as to all Defendants.  An Order accompanies this Opinion.

                                            s/ William J. Martini
                                            **William J. Martini, U.S.D.J.**

**Date: August 16, 2011**